# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| The Business Chain, Inc. d/b/a VDC Brands, a Georgia corporation, | **Case No.**_____ |
| Plaintiff, | |
| v. | |
| Val Du Charron Wines Proprietary Limited, a company registered to conduct business in South Africa, Stuart Entwistle, and Catherine Entwistle, | |
| Defendants. | |

## COMPLAINT

Plaintiff The Business Chain, Inc. d/b/a VCD Brands, for its complaint against Val Du Charron Wines Proprietary Limited and Stuart Entwistle, states:

### PARTIES

1. Plaintiff The Business Chain, Inc. d/b/a VDC Brands (the "Business") is a Georgia corporation registered to conduct business, and having its principal place of business, in Minnesota. The Business is engaged in the import and distribution of wine.

2. Upon information and belief, Defendant Val Du Charron Wines Proprietary Limited ("Val Du Charron") is a company registered to conduct, and having its principal place of business, in the Republic of South Africa. Val Du Charron is engaged in the production of wine.

3. Upon information and belief, Defendant Stuart Entwistle is an individual resident of the Republic of South Africa.

1

4. Upon information and belief, Defendant Catherine Entwistle is an individual resident of the Republic of South Africa.

## JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this action involves a citizen of a state and a citizen of a foreign state and the amount in controversy exceeds $75,000.

## VENUE

6. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this action occurred in this judicial district and the Defendants are not residents of the United States.

## FACTUAL ALLEGATIONS

**I.  Development of the Aphaea Wine Label**

7. The Business began negotiations with Val Du Charron in 2013 regarding developing a brand of wine to export from South Africa to the United States.

8. In 2013, Craig Entwistle was the CEO of The Business and Stuart Entwistle was the owner of Val Du Charron. Craig Entwistle and Stuart Entwistle are brothers.

9. Upon information and belief, Catherine Entwistle and Stuart Entwistle are married.

10. The new brand of wine was developed with the intent that the Business would control the brand and Val Du Charron would manufacture the brand.

11. The Business hired The Butin Group, Inc., a marketing and brand development company, to assist in developing the trade mark and label for the new brand of wine.

12. Mary Butin owns The Butin Group, Inc. and assisted with developing the label for the new brand of wine.

13. In early 2014, the Business began formulating the packaging for the wine and name of the wine.

14. On or about February 17, 2014, Jesse Balsimo, vice president of the Business, proposed a tree of life concept for the wine label to Butin and Craig Entwistle. A true and correct copy of the February 17, 2014 email containing the proposal is attached as **Exhibit A**.

15. On or about March 7, 2014, Stuart Entwistle sent Craig Entwistle a picture of the new stained glass window being installed at the Conference Center at the Val Du Charron vineyard. Craig Entwistle then forwarded the email to Balsimo and Butin. A true and correct copy of the March 7, 2014 email is attached as **Exhibit B**.

16. Upon information and belief, the image of the stained glass tree previously existed online and was from a building in Europe.

17. Thereafter, the Business contacted a South African artist, Louise Duminy at Adam's Rib, to render drawings of stained glass window tree of life for the wine label.

18. In the Spring of 2014, Balsimo, Butin, and Craig Entwistle began discussing the name of the wine.

19. Butin proposed names derived from Latin or Greek. Among the names offered by Butin was Alphaea.

20. Alphaea was a misspelling of the Greek goddess Aphaea.

21. After conducting a Legal Zoom search for Alphaea and two other names, the Business decided on Aphaea as the name for the wine.

22. Throughout the Summer and Fall of 2014, Butin, Balsimo, and Craig Entwistle worked on developing the language for the Aphaea label.

085343\001\4829571.v1

23. The only input Val Du Charron had on the language of the label was in relation to regulatory requirements in South Africa.

24. Balsimo and Craig Entwistle approved the language for the Aphaea label after Val Du Charron recommended the regulatory additions.

## II. **Expansion of Aphaea Label**

25. In the summer of 2016, Balsimo announced a proposed expansion of Aphaea to include a rosé and red blend to certain buyers of Aphaea.

26. By email from Balsimo to Craig Entwistle on or about October 14, 2016, Balsimo noted Val Du Charron's lack of enthusiasm about the proposed expansion. A true and correct copy of the October 14, 2016 email is attached as **Exhibit C**.

27. Throughout the remainder of 2016, Balsimo, Butin, and Craig Entwistle discussed the expansion of the Aphaea label, eventually deciding on the name Storm for the red blend and Silk for the rosé.

28. Balsimo and Butin also worked with Duminy at Adam's Rib to develop labels for the Storm and Silk Aphaea wines.

## III. **Breakdown of Business Relationship**

29. In late 2016 and early 2017, the relationship between the Business and Val Du Charron became contentious.

30. On or about January 20, 2017, Balsimo visited the Val Du Charron vineyard to meet with Stuart Entwistle and Catherine Entwistle to provide a market update and discuss the Aphaea brand.

085343\001\4829571.v1

31. Directly following the January 20, 2017 meeting, Val Du Charron abruptly terminated its relationship with the Business. A true and correct copy of the January 20, 2017 termination email is attached as **Exhibit D**.

32. Thereafter, the Business then began discussions with Longridge Wynlandgoed Proprietary Limited ("Longridge") to produce the Aphaea wine.

33. The Business also worked with a designer in the United States to redesign the label for Aphaea wines.

34. On or about July 31, 2017, Val Du Charron's counsel sent letters to distributors in the United States stating the Business "has conducted itself in a commercially unethical manner which can only be described as sharp practice and in bad faith." A true and correct copy of one of the July 31, 2017 letters from Val Du Charron's attorney is attached as **Exhibit E**.

35. On or about October 10, 2017, the Business received notification that Aphaea was being discontinued by its largest distributor in the United States. Upon information and belief, that discontinuation was directly caused by the letter from Val Du Charron's counsel.

### IV. Trademark Registration

36. The Business has used the mark "APHAEA" (hereinafter the "Mark") in commerce since at least 2015 in the importing, marketing, distributing, and selling of wine.

37. Val Du Charron has known of the Business's use of the Mark since the beginning of its use by the Business.

38. Val Du Charron has acquiesced and agreed to the Business's use of the Mark and has acknowledged the Business's ownership of the Mark.

39. The Business's Mark is inherently distinctive and has acquired secondary meaning as a designation of origin for the Business's importing, marketing, distributing, and selling of wine.

40. On or about June 6, 2014, the Business submitted a trademark application for the Mark with the United States Patent and Trademark Office ("USPTO").

41. On or about July 7, 2014, Balsimo provided a digital image of the wine bottle with the tree of life image and Mark for use in the trademark application.

42. Due to a processing error, the application was not officially filed with the USPTO until January 10, 2017.

43. The Business's trademark application is currently in suspension with the USPTO.

44. On or about January 30, 2017, with a relation back date to the January 10, 2017 filing in the United States, the Business submitted a trademark application for the Mark to the Companies and Intellectual Property Commission in South Africa.

45. On or about April 21, 2017, after the Business had already submitted its trademark application in South Africa, Val Du Charron improperly and unlawfully submitted a trademark application for the Mark to the Companies and Intellectual Property Commission in South Africa.

46. The Business' trademark application for the Mark has been conditionally approved by the Companies and Intellectual Property Commission in South Africa.

## V. The South African Lawsuit

47. On August 2, 2017, Val Du Charron commenced an application against Longridge in the High Court of South Africa (the "South African Lawsuit") seeking an interdict preventing Longridge from bottling, distributing, marketing or selling wines bearing the Aphaea labels.

48. The Business is in the process of intervening in the South African Lawsuit.

085343\001\4829571.v1

## COUNT I

## Trademark Infringement

49. The Business re-alleges and incorporates by reference the preceding allegations as if set forth fully herein.

50. The Business's Mark is a valid and enforceable trademark.

51. The Business's Mark is inherently distinctive or, in the alternative, has acquired strong secondary meaning among relevant consumers throughout the United States.

52. Val Du Charron has improperly and unlawfully appropriated and used the Business's Mark in the promotion, sale, offer for sale, distribution, and/or advertising of its own products, including without limitation wine.

53. Val Du Charron's conduct constitutes a willful and knowing attempt to trade on the goodwill that the Business owns and has developed in its Mark.

54. Val Du Charron's unauthorized appropriation and use of the Business's Mark in interstate commerce is likely to cause confusion, or to cause mistake, or to deceive the purchasing public and others, leading them to mistakenly believe that Val Du Charron's products are authorized by, or are associated with, the Business and its products.

55. Val Du Charron's unauthorized appropriation and use of the Business's Mark in interstate commerce constitutes trademark infringement.

56. Val Du Charron's unauthorized imitation of the Business's Mark is a knowing, willful, and intentional violation of the Business's rights.

57. Among other things, Val Du Charron's infringement diminishes the value of the Business's Mark, as well as the Business's goodwill and reputation.

085343\001\4829571.v1

58. Val Du Charron's appropriation and use of the Business's mark in interstate commerce in connection with the marketing and sale of Val Du Charron's products, including without limitation wine, is likely to cause confusion and mistake and to deceive consumers and others as to the origin, sponsorship, or affiliation of the parties' products.

59. As a direct result of Val Du Charron's infringement, the Business has incurred, and will continue to incur, both general and special damages in an amount far in excess of $75,000.

60. The Business is also entitled to recover, enhanced damages, including without limitation, treble damages, costs, reasonable attorneys' fees, and interest.

61. Upon information and belief, Val Du Charron will continue to unlawfully appropriate and use the Business's Mark unless enjoined from doing so, and will cause irreparable harm to the goodwill and reputation of the Business. As a result, the Business has no adequate remedy at law.

62. As a result of the foregoing, the Business is entitled to preliminary and permanent injunctive relief restraining and enjoining Val Du Charron from any further infringement of the Business's Mark.

## COUNT II

### Tortious Interference with Prospective Economic Advantage

63. The Business re-alleges and incorporates by reference the preceding allegations as if set forth fully herein.

64. The Business had a reasonable expectation of continued business with distributors in the United States of the Aphaea brand and profits resulting from distribution of the Aphaea brand.

65. Defendants were aware of the Business' relationship with distributors of the Aphaea brand and expectation of continued business with the Aphaea brand wines.

66. Defendants intentionally and tortiously interfered with the Business' expectation of continued business with distributors of the Aphaea brand by, among other things, contacting Aphaea's distributors and stating the Business "conduct[s] itself in a commercially unethical manner which can only be described as sharp practice and in bad faith."

67. In the absence of Defendants' wrongful acts, it is reasonable that the Business would have continued business with distributors of the Aphaea brand in the United States and recognized profits from the distribution of the Aphaea brand.

68. As a direct and proximate result of Defendants' tortious interference with economic advantage, the Business has incurred, and will continue to incur, damages in an amount in excess of $75,000, plus interest, costs, and attorneys' fees.

## COUNT III

### Tortious Interference with Business Relations

69. The Business re-alleges and incorporates by reference the preceding allegations as if set forth fully herein.

70. The Business had a reasonable expectation of continued business with distributors in the United States of the Aphaea brand.

71. Defendants were aware of the Business' relationship with distributors of the Aphaea brand and expectation of continued business with the Aphaea brand wines.

72. Defendants intentionally and tortiously interfered with the Business' expectation of continued business with distributors of the Aphaea brand by, among other things, contacting

085343\001\4829571.v1

Aphaea's distributors and stating the Business "conduct[s] itself in a commercially unethical manner which can only be described as sharp practice and in bad faith."

73. In the absence of Defendants' wrongful acts, it is reasonable that the Business would have continued business with distributors of the Aphaea brand in the United States.

74. As a direct and proximate result of Defendants' tortious interference with economic advantage, the Business has incurred, and will continue to incur, damages in an amount in excess of $75,000, plus interest, costs, and attorneys' fees.

## COUNT IV

### Defamation

75. The Business re-alleges and incorporates by reference the preceding allegations as if set forth fully herein.

76. The Business conducts itself in a commercially ethical and honest manner.

77. The Business was the first to file an application for trademark for the Marks in both the United States and South Africa.

78. Notwithstanding the foregoing, Defendants caused a letter to be sent to distributors of the Aphaea brand claiming the Business "conducted itself in a commercially unethical manner which can only be described as sharp practice and in bad faith."

79. In the same letter, Defendants claimed that Val Du Charron held copyright to the Aphaea label and that the Business acted "in a dishonest and subterfuge manner" in applying for trademarks for the Aphaea brand.

80. Defendants intended that the letter harm the Business's reputation and harm the Business' relationship with its distributors.

81. Upon information and belief, the letter caused at least one of the Business' distributors to cease distribution of the Aphaea brand.

82. As a direct and proximate result of Defendants' defamatory statements, the Business has incurred, and will continue to incur, damages in an amount in excess of $75,000, plus interest, costs, and attorneys' fees.

## COUNT V

## Violation of Deceptive Trade Practices Act

83. The Business re-alleges and incorporates by reference the preceding allegations as if set forth fully herein.

84. Operating within the course of its business, Val Du Charron caused a letter to be sent to a number of distributors of the Aphaea brand in the United States.

85. The letter caused confusion and misunderstanding as to the ownership and source of the Aphaea brand.

86. The letter also included false, disparaging remarks regarding the Business, including that the Business "conducted itself in a commercially unethical manner which can only be described as sharp practice and in bad faith."

87. As a result, Val Du Charron has violated the Minnesota Deceptive Trade Practices Act, including without limitation Minn. Stat. § 325D.44 (the "Deceptive Trade Practices Act").

88. As a direct and proximate result of Val Du Charron's violation of the Deceptive Trade Practices Act, the Business has incurred, and will continue to incur, damages in an amount in excess of $75,000, plus interest, costs, and attorneys' fees.

89. The Business is also entitled to temporary and permanent injunctive relief restraining and enjoining Val Du Charron, and other acting in concert with them, from further

contact with distributors of the Aphaea brand and from interfering with the Business' business relationships.

## COUNT VI

## Violation of Consumer Fraud Act

90. The Business re-alleges and incorporates by reference the preceding allegations as if set forth fully herein.

91. Val Du Charron caused a letter to be sent to a number of distributors of the Aphaea brand in the United States.

92. The letter misrepresented the ownership of the Aphaea brand and caused confusion among distributors of the Aphaea brand.

93. Val Du Charron intended that the distributors of the Aphaea brand in the United States rely upon the misleading statements in the letter.

94. As a result, Val Du Charron has violated the Minnesota Consumer Fraud Act, including without limitation Minn. Stat. § 325F.69 (the "Consumer Fraud Act").

95. As a direct and proximate result of Val Du Charron's violation of the Consumer Fraud Act, the Business has incurred, and will continue to incur, damages in an amount in excess of $75,000, plus interest, costs, and attorneys' fees.

96. The Business is also entitled to temporary and permanent injunctive relief restraining and enjoining Val Du Charron, and other acting in concert with them, from further contact with distributors of the Aphaea brand and from interfering with the Business' business relationships.

## COUNT VII

### Declaratory Relief

97. The Business re-alleges and incorporates by reference the preceding allegations as if set forth fully herein.

98. Val Du Charron inappropriately contends that it owns a copyright concerning the label for the Aphaea brand of wines and that the Business has infringed on that right.

99. Upon information and belief, the image depicted on the label was created by third-parties long before Val Du Charron purported to "create" it.

100. In any event, even if Val Du Charron owned a valid copyright, the Business' labeling would not infringe upon it.

101. The Business and Val Du Charron disagree over the ownership of the purported copyright of the Aphaea label.

102. The Business is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

    a. Val Du Charron owns no copyright in the artwork to the Aphaea label.

    b. Val Du Charron owns no copyright in any graphic or material used by the Business.

    c. The Business has not infringed on any purported copyright of Val Du Charron.

103. An actual and justiciable controversy exists between the Business and Val Du Charron relating to the purported copyright of the Aphaea label and a declaratory judgment pursuant to 28 U.S.C. § 2201 is necessary and appropriate to determine the ownership of the Aphaea label.

085343\001\4829571.v1

## COUNT VIII

### Declaratory Relief

104. The Business re-alleges and incorporates by reference the preceding allegations as if set forth fully herein.

105. Val Du Charron has improperly and unlawfully appropriated and used the Business's Marks and has indicated that it intends in the future to continue to appropriate and use the Marks.

106. The Business is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

   a. The Business's Mark is inherently distinctive and has acquired secondary meaning as a designation of origin for the Business.

   b. Val Du Charron's appropriation and use of Marks is likely to cause confusion, mistake, and to deceive potential purchasers and others, whereby they would be led to mistakenly believe that the Business and its Marks are affiliated with, related to, sponsored by, or connected to Val Du Charron in violation of 15 U.S.C. §§ 1114, 1117 and 1125.

   c. Val Du Charron's appropriation and use of the Business's marks in connection with the marketing and sale of Defendants' products, including without limitation wine, is likely to cause confusion and mistake and to deceive consumers and others as to the origin, sponsorship, or affiliation of the parties' products.

   d. Val Du Charron's appropriation and use of Business's Marks is a knowing, willful, and intentional violation of the Business's rights.

085343\001\4829571.v1

107. An actual and justiciable controversy exists between the Business and Val Du Charron relating to the Marks, and a declaratory judgment pursuant to 28 U.S.C. § 2201 is necessary and appropriate to adjudicate the Business's ownership of the Marks.

**WHEREFORE**, The Business Chain, Inc. d/b/a VDC Brands prays for the following relief:

1. Awarding damages in an amount in excess of $75,000;

2. Temporarily and permanently restraining and enjoining Val Du Charron from infringement of the Business's Mark;

3. Temporarily and permanently restraining and enjoining Val Du Charron, Stuart Entwistle, and Catherine Entwistle, and those acting in concert with them, from contacting distributors of the Aphaea brand and from interfering with the Business' business relationships;

4. For an order declaring that:

    a. Val Du Charron owns no copyright in the artwork to the Aphaea label;

    b. Val Du Charron owns no copyright in any graphic or material used by the Business; and

    c. The Business has not infringed on any purported copyright of Val Du Charron.

5. For an order declaring that:

    a. The Business's Mark is inherently distinctive and has acquired secondary meaning as a designation of origin for the Business.

    b. Val Du Charron's appropriation and use of Marks is likely to cause confusion, mistake, and to deceive potential purchasers and others, whereby they would be led to mistakenly believe that the Business and its

15

Marks are affiliated with, related to, sponsored by, or connected to Val Du Charron in violation of 15 U.S.C. §§ 1114, 1117 and 1125;

    c. Val Du Charron's appropriation and use of the Business's marks in connection with the marketing and sale of Defendants' products, including without limitation wine, is likely to cause confusion and mistake and to deceive consumers and others as to the origin, sponsorship, or affiliation of the parties' products.

    d. Val Du Charron's appropriation and use of Business's Marks is a knowing, willful, and intentional violation of the Business's rights.

6. For a disbursement of costs, fees, and interest as the Court sees fit; and

7. For any other relief the Court deems just.

Dated: October 27, 2017

**FABYANSKE, WESTRA, HART & THOMSON, P.A.**

By: _/s/ Elise R. Radaj_
Richard G. Jensen (MN Atty #18990X)
Elise R. Radaj (MN Atty #0397650)
333 South Seventh Street, Suite 2600
Minneapolis, MN 55402
rjensen@fwhtlaw.com
eradaj@fwhtlaw.com
(612) 359-7600 (P)
(612) 359-7602 (F)
**ATTORNEYS FOR PLAINTIFF**